**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

QUALITY AIR SERVICES, LLC     *
    *
    *
      v.     *       Civil No. – JFM-12-3338
    *
RICHARD C. DIPIPPO, ET AL.     *
    ******

**MEMORANDUM**

Quality Air Services, LLC instituted this action against Richard C. DiPippo, RCD & Associates, Inc., Eagle Strategies, LLC, NYLIFE Securities, LLC, MML Investors Services, LLC, Parminder S. Ahuja, and MGA Pension Consultants, Inc. in the Circuit Court for Montgomery County, Maryland.  Plaintiffs allege that DiPippo, who at various times was an agent for RCD & Associates, Inc., Eagle Strategies, LLC, NYLIFE Securities, LLC and MML Investors Services, LLC, improperly advised three of plaintiff's principals to create a defined benefit plan for plaintiff's employees and, after the plan was established, made imprudent investments for the plan.  Allegedly, DiPippo chose investments that resulted in unreasonably high commissions being paid to him.  Ahuja, who at relevant times was the accountant for plaintiff, and MGA Pension Consultants, Inc. and its president, Lee Bachu, are alleged to have improperly advised plaintiff to establish a defined benefit plan.  Eventually, there was an $800,000 shortfall in the defined benefit plan's accounts that was made up for by two of plaintiff's principals, Mark Goldsman and Irina Goldsman, who waived their right to receive benefits under the plan.

The action was removed to this court by MML Investors Services, LLC.  The other defendants consented to the removal.

1

Presently pending is a motion to remand filed by plaintiff and motions to dismiss or stay to compel arbitration filed by MML Investors Services, LLC and NYLIFE Securities, DiPippo, and RCD & Associates.  The motion to remand will be denied.  The motions to dismiss or to stay will be treated as motions to stay and, as such, will be granted.

I.

One of the claims asserted by plaintiff is clearly pre-empted by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§1001, *et seq*:  the claim that DiPippo imprudently made investments with the defined benefit plan.  The Fourth Circuit has held that there are three essential elements for finding preemption under ERISA:

> (1) the plaintiff must having standing under [Section 1132(a)] to pursue its claim; (2) its claim must "fall [ ] within the scope of an ERISA provision that [it] can enforce via [§ 1132(a)]"; and (3) the claim must not be capable of resolution "without an interpretation of the contract governed by federal law," i.e., an ERISA-governed employee benefit plan.

*Moon v. BWX Techs., Inc.*, No. 11-1750, 2012 WL 5992209, at *4 (4th Cir. Dec. 3, 2012) (quoting *Sonoco Prods. Co. v. Physicians Health Plan, Inc.*, 338 F.3d 366, 372 (4th Cir. 2003)).

Unquestionably plaintiff has standing to bring this action since it is the administrator of the defined benefit plan.  Likewise, plaintiff's claim falls within the scope of ERISA's civil enforcement provisions.  One of the purposes of ERISA is to "protect retirement plans from self-dealing, imprudent investment and misappropriation of plan funds."  *Stanton v. Shearson Lehman/Am. Express, Inc.*, 631 F. Supp. 100, 104-05 (N.D. Ga. 1986).  DiPippo had discretion to make investments for the plan, and thus was a fiduciary under ERISA.  *See* 29 U.S.C. §1002(21)(A); *Meyer v. Burkshire Life Ins. Co.*, 250  F. Supp. 2d 544, 561 n.25 (D. Md. 2003), *aff'd*, 372 F.3d 261 (4th Cir. 2004).  Finally, resolution of this dispute requires interpretation of the plan's provisions, at least for the purpose of determining the amount of the loss suffered by the plan.  Accordingly, plaintiff's motion to remand is denied.

II.

Both the Investor Account Form that plaintiff signed in establishing its contractual relationship with MML Investors and the Retirement Plan Application that plaintiff signed in establishing its contractual relationship with NYLIFE Securities contained provisions stating that all controversies between plaintiff and MML Investors and NYLIFE Securities were to be submitted to arbitration. Plaintiff's various arguments that these agreements should not be enforced are unpersuasive.

A.

As to the MML Investors agreement, plaintiff argues that it should not be enforced because (1) DiPippo had made misrepresentations before plaintiff entered into the agreement, (2) plaintiff had "no practical ability" to refuse to sign the contract, (3) the contract was not entered in an arms-length transaction between two equal parties to a contract, and (4) Mr. and Mrs. Goldsman, who signed the contract on behalf of plaintiff, were Russian-born and English was their second language.

This argument is unpersuasive. In effect, plaintiff is arguing that the agreement is unconscionable. Under Maryland law a contract is deemed "unconscionable" if it is characterized by "extreme unfairness, which is made evident by (1) one party's lack of meaningful choice, and (2) contractual terms that unreasonably favor the other party." *See Walther v. Sovereign Bank*, 386 Md. 412, 426, 872 A.2d 735, 743 (2005) (internal quotations omitted). Here, there is no evidence that the agreement could not have been modified to delete the arbitration proceedings at Mr. and Mrs. Goldsman's insistence. Moreover, plaintiff is a sophisticated business entity, and the arbitration clause in the agreement was conspicuous. There also is no evidence on the record to suggest that the terms of the arbitration agreement

3

unreasonably favor MML Investors.  The arbitration panel may well rule against it.  As for the contention that English was a second language for Mr. and Mrs. Goldsman, it is clear from the record that they ran a successful business, irrespective of the fact that English was their second language.

B.

In regard to the NYLIFE Securities agreement, plaintiff contends that the arbitration clause does not apply to it because the agreement mistakenly referred to page 11, rather than page 10 of the agreement, in identifying the parties whose disputes were to be arbitrated. DiPippo, not plaintiff, signed the agreement on page 11.  However, it is clear that this was simply a typographical error.  It is not disputed that plaintiff was the "investor" under the agreement and the arbitration clause provided that "all claims and controversies that may arise between the investor(s) whose signature(s) appear in Section D on page 11 (or any on his/her behalf) and NYLIFE Securities . . . shall be determined by arbitration."  DiPippo, on the other hand clearly was not an investor.  Rather, he was NYLIFE Securities' registered representative, and his signature appears in Section F, not Section D, of the agreement.  The Goldsmans signed the agreement in Section D on behalf of plaintiff.  Moreover, immediately above the Goldsman's signatures was the following language:  "This Account application contains a Pre-Dispute Arbitration Agreement in Part III, Section C on page 10.  By signing below, I/we am/are accepting the provisions of this agreement and confirming a copy of this agreement has been received."

C.

Plaintiff also contends that the NYLIFE Securities agreement calls for arbitration before the National Association of Securities Dealers, Inc., and the NASD no longer exists.  Plaintiff's

4

argument fails because the NASD did not simply cease to exist, but was assumed into the

Financial Industrial Regulatory Authority ("FINRA"), which inherited NASD's existing rules

and regulations.  *See Bauscher v. Brookstone Sec., Inc.*, No. 12-CV-028, 2012 WL 3100383, at

*5 (D. Idaho July 30, 2012) (citing *Lewis v. UBS Fin. Servs. Inc.*, 818 F. Supp. 2d 1161, 1166

(N.D. Cal. 2011) (holding that court can compel arbitration "before FINRA where . . . the

arbitration agreement specifies that arbitration will occur under the rules of NASD" and

collecting similar cases)).

D.

Finally, plaintiff contends that its claims under NYLIFE Securities agreement allegedly

would be time-barred in arbitration.   FINRA's *Code of Arbitration Procedure for Customer

Disputes*, § 12206(a), which is incorporated into the NYLIFE Securities agreement, provides that

"[n]o claim shall be eligible for submission to arbitration under the Code where six years have

elapsed from the occurrence or event giving rise to the claim."

According to plaintiff, its claim first arose in 2005, when DiPippo improperly advised

plaintiff to establish the defined benefit plan.  It is not entirely clear to me that the agreement

covers DiPippo's advice pertaining to the establishment of a defined benefit plan, as

distinguished from DiPippo's imprudent investments in the plan.  Despite the NYLIFE Securities

agreement's broad language, (and the broad language of the MML Investor's agreement) an

arbitration panel composed of representatives of the securities industry has no particular

expertise in interpreting ERISA law.  In any event, FINRA's rules expressly provide that "[t]he

[arbitration] panel will resolve any questions regarding the eligibility of a claim under this rule."

FINRA Code, Section 12206(a).  If the panel determines that any claim asserted by plaintiff is

not subject to arbitration because it is time-barred or otherwise, by definition the arbitration agreement does not apply to the claim, and this action may proceed as to it.[1]

III.

Plaintiff also argues that the agreements are not enforceable as to defendants DiPippo and RCD & Associates.  This argument is without merit because even if these defendants did not sign the arbitration provision, they clearly are entitled to enforce its terms based upon common law principles of contract and agency law.  *See Int'l Paper Co. v. Schwabedissen Maschinen Anlagen GMBH*, 206 F.3d 411, 416-17 (4th Cir. 2000).

For these reasons, the motions to stay will be granted.  Moreover, the action will be stayed as to all defendants because it is in the interest of the efficient resolution of this litigation to wait to see the results of the arbitration before resolving the claims that are not subject to arbitration.  After the arbitrator has ruled, this court can determine (if necessary) whether plaintiff's claims concerning the alleged wrongful establishment of the defined benefit plan should proceed in federal or state court and, if in federal court, the merits of the claim.


Date:   February 25, 2013                   _____/s/_____
                                            J. Frederick Motz
                                            United States District Judge

---

[1] I note that the arbitration panel will, of course, have to apply the standards applicable to investments by fiduciaries because DiPippo was a fiduciary to the plan under ERISA.